UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HUNTSMAN, LLC, ET AL.                    CIVIL ACTION

VERSUS                                   NO: 14-2237

BLESSEY MARINE SERVICE, INC.,            SECTION: "J"(5)
ET AL.

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* (**Rec. Doc. 54**) filed by Defendant, T.T. Barge Cleaning Mile 183, Inc. ("T.T. Barge"), an *Opposition* thereto (**Rec. Doc. 56**) filed by Plaintiffs, Huntsman International, LLC, Huntsman Petrochemical, LLC, and Liberty International (collectively "Huntsman"), and a *Reply* (**Rec. Doc. 63**) filed by T.T. Barge. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **GRANTED IN PART AND DENIED IN PART**.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This matter arises out of a contractual dispute between Huntsman and Blessey Marine Services, Inc. ("Blessey"). In September 2013, Huntsman contracted with Blessey pursuant to a Term Time Charter Master Service Agreement ("the Charter Agreement") to charter tank barge WEB 135 ("the barge") to carry

1

a shipment of Neodene cargo ("the cargo") from Geismar, Louisiana, to Chocolate Bayou, Texas. As part of the agreement, Huntsman sent cleaning instructions to Blessey, requesting that the barge be stripped and squeegeed prior to loading the cargo. Blessey subsequently contracted with T.T. Barge to perform the cleaning services and instructed T.T. Barge to strip and squeegee the barge.

T.T. Barge purportedly performed its cleaning services on September 27, 2013. However, Huntsman alleges that the cargo "failed on appearance at the first foot sample" because of T.T. Barge's inadequate tank cleaning. (Rec. Doc. 56, at 2.) According to T.T. Barge's job sheet, it did not strip and squeegee the barge. Instead, T.T. Barge vented and wiped down the barge. Blessey returned the barge to T.T. Barge to be cleaned again. After the second cleaning, the barge was loaded with the cargo on October 4. Ultimately, Huntsman claimed that 262,315 pounds of cargo were contaminated due to improper cleaning. (Rec. Doc. 18, at 3.)

Huntsman filed the present lawsuit against Blessey in this Court on September 29, 2014, alleging that Blessey breached the Charter Agreement and acted negligently and without due care. (Rec. Doc. 1, at 3.) Huntsman subsequently filed an amended complaint on February 5, 2015, adding T.T. Barge, amongst other parties, as a defendant in the matter. (Rec. Doc. 18.) In its amended complaint,

Huntsman asserts claims against T.T. Barge for: (1) breach of contract and/or charter party, (2) unseaworthiness, (3) want of workmanlike performance, (4) negligence, and/or (5) want of due care. (Rec. Doc. 18, at 4.)

On February 25, 2016, T.T. Barge filed the instant motion seeking summary judgment on all Huntsman's claims against it. (Rec. Doc. 54.) Huntsman opposed the motion on March 2, 2016. (Rec. Doc. 56.) T.T. Barge filed a Motion for Leave to File Reply, which this Court granted on March 9, 2016. (Rec. Doc. 62.)

## PARTIES' ARGUMENTS

### A. Motion for Summary Judgment

In its motion, T.T. Barge argues that it is entitled to summary judgment on all five of Huntsman's claims. First, T.T. Barge argues that Huntsman's unseaworthiness claim is not supported by the facts or the law. According to T.T. Barge, Huntsman failed to allege that it owed a warranty of seaworthiness or a duty to provide a seaworthy vessel. Further, T.T. Barge argues that only an owner or operator of a vessel can be held liable for breach of the warranty of seaworthiness. Because T.T. Barge was not an owner of operator of the barge, it argues that summary judgment in its favor is appropriate.

Similarly, T.T. Barge argues that the law does not provide Huntsman a cause of action for want of workmanlike performance. According to T.T. Barge, only a stevedore owes a duty of workmanlike performance, and it only owes such a duty to the vessel owner. Here, Huntsman did not own the barge, and T.T. Barge was not a stevedore. Therefore, T.T. Barge asserts that it is entitled to summary judgment.

Third, T.T. Barge argues that Huntsman's breach of contract claim fails because Huntsman and T.T. Barge were not parties to a contract at any time. Huntsman has admitted that it did not contract directly with T.T. Barge. Further, T.T. Barge asserts that Blessey did not advise it that it was acting on behalf of Huntsman. Thus, it had no knowledge that its cleaning services would benefit Huntsman. T.T. Barge argues that it cannot be held liable for breach of contract under these circumstances.

Fourth, T.T. Barges asserts that Huntsman's claims for negligence and want of due care fail because it did not owe any duties to Huntsman. T.T. Barge did not owe a contractual duty because it did not enter into a contract with Huntsman. T.T. Barge also argues that it did not owe Huntsman a duty to refrain from negligent conduct. In the tort context, duty is determined by the scope of the risk that the negligent conduct foreseeably entails.

4

T.T. Barge argues that the injuries to Huntsman were unforeseeable because it did not know that its cleaning services were intended to benefit Huntsman.

**B. Opposition**

In its opposition, Huntsman argues that summary judgment is inappropriate on its negligence, want of due care, and breach of contract claims. Huntsman does not contest that T.T. Barge is entitled to summary judgment on its unseaworthiness and want of workmanlike performance claims. First, with respect to the negligence and want of due care claims, Huntsman argues that the injury sustained was within the scope of T.T. Barge's negligent conduct. According to Huntsman, damage to cargo is a foreseeable consequence of improper cleaning, even if T.T. Barge did not know the identity of the cargo owner. Huntsman argues that foreseeability of risk to a specific person is not required to establish a legal duty. Thus, Huntsman asserts that T.T. Barge is not entitled to summary judgment on the negligence and want of due care claims.

Second, Huntsman addresses its breach of contract claim. Huntsman argues that T.T. Barge and Blessey entered into an agency relationship with respect to the cleaning agreement. Thus, Huntsman claims that it was a party to the cleaning contract, even

though Blessey did not disclose that it was acting on Huntsman's behalf. According to Huntsman, agency law provides that an undisclosed principal becomes a party to a contract between an agent with actual authority and a third party. Huntsman claimed that T.T. Barge breached the cleaning contract by failing to strip and squeegee the barge as requested. Thus, Huntsman argues that it may bring a claim for breach of contract against T.T. Barge.

## C. Reply

In its reply, T.T. Barge addresses Huntsman's negligence, want of due care, and breach of contract claims. First, with respect to the contract claim, T.T. Barge argues that Huntsman failed to prove an agency relationship existed between it and Blessey. Specifically, T.T. Barge claims that Huntsman did not exercise control over Blessey's cleaning arrangement with T.T. Barge. According to T.T. Barge, Blessey retained control over several key decisions and had the power to alter Huntsman's cleaning instructions at its discretion. Thus, T.T. Barge argues that the control aspect of an agency relationship is lacking. Further, T.T. Barge asserts that Huntsman did not communicate with it or with any other companies that Blessey tasked with cleaning barges.

T.T. Barge also casts doubt on Huntsman and Blessey's characterization of their relationship. It argues that the Court

is not bound by the parties' conclusory statements regarding agency. In addition, T.T. Barge notes that Blessey claimed to have acted "at the direction and control" of Huntsman, but it only made such statements after Blessey and Huntsman settled their disputes. Thus, T.T. Barge asserts that Blessey's statement is unreliable. Finally, T.T. Barge argues that it did not breach the cleaning contract with Blessey because it acted according to Blessey's oral instructions and with the knowledge that the barge had previously been cleaned.

Second, T.T. Barge argues that Huntsman's negligence and want of due care arguments fail. Specifically, T.T. Barge asserts that it could not reasonably have foreseen damage to Huntsman's cargo. It argues that it did not know the identity or characteristics of the cargo to be loaded following the cleaning. Thus, T.T. Barge claims that it could not have foreseen that the previous cargo, paraffin, would be incompatible with Huntsman's cargo. Further, T.T. Barge asserts that it did not know that the barge would be loaded with cargo at all after it was cleaned. Thus, T.T. Barge argues that it could not have foreseen the injury sustained by Huntsman, and it therefore did not owe any legal duties to Huntsman.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l*

8

*Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### A. Unseaworthiness and Want of Workmanlike Performance

Huntsman does not oppose T.T. Barge's motion for summary judgment on its unseaworthiness and want of workmanlike performance claims. Further, it appears to the Court that the

motion has merit. Accordingly, T.T. Barge is entitled to summary judgment on Huntsman's unseaworthiness and want of workmanlike performance claims.

**B. Breach of Contract**

In its amended complaint, Huntsman alleges that T.T. Barge breached a "contract and/or charter party." T.T. Barge argues that the only contract between the parties is the Charter Agreement. With regards to the Charter Agreement, Huntsman admits that it did not provide a copy of the agreement to T.T. Barge before the cleaning. (Rec. Doc. 54-3, at 5-6.) Further, Huntsman concedes that it did not ask T.T. Barge to be bound by the terms of the Charter Agreement. *Id.* at 6. Therefore, it is undisputed that T.T. Barge did not breach the Charter Agreement because it was not a party to the Charter Agreement.

However, in its opposition to the instant motion, Huntsman argues that the relevant agreement is the cleaning contract between Blessey and T.T. Barge. Huntsman claims that Blessey acted as its agent in the cleaning contract, granting Huntsman the right to sue for breach. General agency law applies in maritime cases. *Port Ship Serv., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc.*, 800 F.2d 1418, 1420 (5th Cir. 1986) (citing *W. India Indus. v. Vance & Sons AMC-Jeep,* 671 F.2d 1384, 1387 (5th Cir. 1982)). The Fifth

Circuit refers to the Restatement of Agency for accurate statements of general agency law. *Id.* (citing *Lubbock Feed Lots, Inc. v. Iowa Beef Processors,* 630 F.2d 250, 275-76 (5th Cir. 1980)).

An agency relationship arises when a principal manifests assent to an agent "that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Of Agency § 1.01 (2006). A "well-settled doctrine" of agency law "treats an undisclosed principal as a party to a contract that an agent makes on behalf of the principal, unless the contract excludes the principal as a party. If an agent acts with actual authority in making a contract on an undisclosed principal's behalf, the basis for treating the principal as a party to the contract is that the agent acted reasonably on the basis of the principal's manifestation of assent to the agent. . . . [T]he principal has rights under the contract because the agent acted on the principal's behalf in making the contract." *Id.* § 6.03, comment (b).

A principal is undisclosed when "the third party has no notice that the agent is acting for a principal." *Id.* § 1.04(2)(b). "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably

believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id.* § 2.01. Thus, when a contract is made by an agent for an undisclosed principal pursuant to actual authority, either the agent or the principal may sue for breach of the agreement. *See N.J. Steam Nav. Co. v. Merch.'s Bank of Boston*, 47 U.S. 344, 381 (1848).

In this case, Huntsman introduced sufficient evidence of an agency relationship to overcome T.T. Barge's motion for summary judgment. The Charter Agreement between Huntsman and Blessey provides that the shipper, Huntsman, may reject any barges it deems unsuitable for loading its cargo. (Rec. Doc. 54-6, at 2.) The carrier, Blessey, then arranges the cleaning of the rejected barges on Huntsman's behalf. *Id.* Marian Marunich, Huntsman's bulk ship and barge operations team lead, testified that Huntsman would send instructions to Blessey on how to clean the rejected barges. (Rec. Doc. 58-1, at 3-4.) In the present case, Huntsman instructed Blessey to "strip to less than two barrels and squeegee." *Id.* Ms. Marunich testified that Blessey then made arrangements to clean the barge appropriately, according to Huntsman's instructions. *Id.*

The Charter Agreement, along with Huntsman's instructions, may have created an agency relationship between Huntsman and Blessey. Huntsman manifested assent that Blessey should act on

Huntsman's behalf and subject to its instructions with respect to cleaning the barge. Blessey manifested assent to this arrangement in the Charter Agreement and by seeking T.T. Barge's cleaning services. Pursuant to the Charter agreement and Huntsman's instructions, Blessey had actual authority to enter into a cleaning agreement with T.T. Barge. In such an agency relationship, Huntsman would be an undisclosed principal because T.T. Barge was unaware that Blessey was acting on Huntsman's behalf. Thus, Huntsman may be a party to the contract and entitled to sue for its breach. The Court does not decide whether such an agency relationship existed, but it notes that Huntsman introduced sufficient evidence to create a genuine issue of material fact.

T.T. Barge argues that no agency relationship existed because Huntsman did not exert adequate control over Blessey. T.T. Barge points out that Huntsman left several decisions to Blessey's discretion, including the manner of carrying out Huntsman's instructions, the manner of conveying Huntsman's instructions to the barge-cleaning company, the place the barge was to be cleaned, whether to remove all of the previous cargo from the barge, and whether the barge should be inspected after the cleaning. Ms. Marunich also testified that Blessey was permitted to make changes to Huntsman's instructions at its discretion.

13

However, this evidence does not disprove the existence of an agency relationship. "[A] person may be an agent although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment. A principal's failure to exercise the right of control does not eliminate it . . . ." Restatement (Third) Of Agency § 1.01, comment (c). Further, "[a] principal's control over an agent will as a practical matter be incomplete because no agent is an automaton who mindlessly but perfectly executes commands." *Id.*, comment (f)(1). T.T. Barge has introduced evidence that Huntsman's control over Blessey was incomplete. But genuine issues of material fact remain as to the existence and scope of an agency relationship between Huntsman and Blessey.

T.T. Barge's remaining arguments lack merit. T.T. Barge asserts that Huntsman never directly communicates with the companies that provide cleaning services. This fact is hardly dispositive of the existence of an agency relationship. In addition, T.T. Barge suggests that Huntsman and Blessey are deliberately mischaracterizing their relationship as an agency relationship. T.T. Barge argues that this Court is not bound by Huntsman and Blessey's description of their relationship. However, as discussed above, the Court independently found that Huntsman

introduced enough evidence to create a genuine issue of material fact as to the purported agency relationship. Finally, T.T. Barge argues that it did not breach the cleaning agreement because it followed Blessey's oral instructions. This issue is not presently before the Court, and the Court declines to decide it now.

## C. Due Care & Negligence

The Court will address Huntsman's claims for want of due care and negligence together due to the factual and legal similarities between the claims. T.T. Barge argues that these claims should be dismissed because Huntsman failed to show that T.T. Barge owed it any duty pertaining to its cleaning services.

Huntsman has a plausible claim for negligence based on the legal duty owed by T.T. Barge. "The analysis of a maritime tort is guided by general principles of negligence law." *In re Signal Intern., LLC,* 579 F.3d 478, 491 (5th Cir. 2009). Under general maritime law:

> [A] tortfeasor is accountable only to those to whom a duty is owed. Duty is measured by the scope of the risk that negligent conduct foreseeably entails. The risk of foreseeability is whether the harm that does occur is within the scope of danger created by the defendant's negligent conduct.

*Oliver v. Weeks Marine, Inc.*, No. 10-796, 2011 WL 2413498, at *1 (E.D. La. June 13, 2011) (Lemmon, J.) (quoting *In re Signal Intern.*, 579 F.3d at 491 (internal quotations and citations

omitted)). The "scope of danger" consists of the "natural and probable risks that a reasonable person would likely take into account in guiding her practical conduct." *In re Signal Intern.*, 579 F.3d at 491-92. When determining whether a risk is within the scope of danger, the court should consider "the general types of harm and classes of persons within the scope of danger created by the negligence while accounting for probable or anticipated natural forces." *Id.* at 492. Therefore, the foreseeability inquiry focuses on "general classes of harms and victims." *Id.* As the Fifth Circuit explained,

> We perceive a harm to be the foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention.

*Id.* (quoting *Consolidated Aluminum,* 833 F.2d 65, 68 (5th Cir. 1987)).

In the case at bar, Huntsman correctly asserts that T.T. Barge did not need to foresee that improper cleaning would cause harm specifically to Huntsman. Rather, Huntsman must have been in the general class of people to whom damage could be anticipated. In order for T.T. Barge to owe a duty to Huntsman, damage to Huntsman's cargo must be a probable, anticipated result of T.T. Barge's failure to adequately clean the barge. In a related matter

16

involving Huntsman and Blessey, this Court found that failure to adequately clean a barge would foreseeably cause damages. *Huntsman, LLC v. Blessey Marine Servs., Inc.*, 2015 A.M.C. 1932, 1939 (E.D. La. 2015). Other courts have held similarly. *See Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 828 F. Supp. 1098, 1106 (S.D.N.Y. 1993) ("Clearly, a negligent representation that a hold is clean could lead to contamination of the cargo to be stowed in the hold.").

In its reply, T.T. Barge argues that it should not have anticipated damage to the cargo at issue. It asserts that it was unaware of the characteristics of the cargo to be loaded on the barge and it did not know that the cargo would be incompatible with any previous cargo. However, for a duty to arise, T.T. Barge only needed to be aware of the general type of harm that could result from an improper cleaning. As discussed above, cargo contamination is a reasonably foreseeable consequence of inadequate cleaning. At this time, the Court does not decide whether T.T. Barge's cleaning was improper or negligent. The Court notes that T.T. Barge claims to have acted on oral instructions from Blessey and with the knowledge that the barge had been pre-cleaned. However, Huntsman has introduced enough evidence to create a genuine issue of material fact as to T.T. Barge's duty to

17

properly clean the barge and as to whether T.T. Barge breached that duty. Thus, T.T. Barge is not entitled to summary judgment on Huntsman's negligence and want of due care claims.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that T.T. Barge's *Motion for Summary Judgment* (**Rec. Doc. 54**) is **GRANTED IN PART** with regards to Huntsman's claims against T.T. Barge for unseaworthiness and want of workmanlike performance and **DENIED IN PART** with regards to Huntsman's claims against T.T. Barge for want of due care, negligence, and breach of contract.

New Orleans, Louisiana this 15th day of March, 2016.

CARL J. BARBIER
UNITED STATES DISTRICT COURT